IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBORAH SAMUELS,

        Plaintiff,

v.                                No. CV-13-881 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Deborah Samuels' *Motion to Reverse or Remand Administrative Agency Decision or in the Alternative Motion to Remand Pursuant to Sentence 6 of 24 U.S.C. § 405(d)* with the *Memorandum in Support of Plaintiff's Motion to Reverse or Remand Administrative Agency Decision or in the Alternative Motion to Remand Pursuant to Sentence 6 of 24 U.S.C. § 405(g)* (together the "Motion"), filed on February 17, 2013, (Docs. 16 & 17); *Defendant's Response to Plaintiff's Motion to Reverse and Remand the Administrative Agency Decision* ("Response"), filed on April 21, 2014, (Doc. 18); and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reverse and Remand the Administrative Agency Decision* ("Reply"), filed on May 2, 2014, (Doc. 19).

On February 11, 2005, Ms. Samuels filed an application for social security disability insurance benefits with the Social Security Administration ("Administration"), alleging disability beginning on August 1, 2002. (Doc. 13-1 at 20). Her application was denied initially, and again upon reconsideration on November 18, 2005. (Doc. 13-1 at 20; Doc. 13-3 at 18). Ms. Samuels did not appeal any further, and her insured status for Title

II benefits expired on December 31, 2007. (Doc. 13-1 at 20; Doc. 13-3 at 17).

Ms. Samuels subsequently filed another application for disability benefits on October 6, 2010, alleging that she became disabled and unable to work on October 1, 2002. (Doc. 13-2 at 29–30). The claim was denied on November 23, 2010, and upon reconsideration on July 13, 2011. (Doc. 13-1 at 41–42; Doc. 13-2 at 46–47). Ms. Samuels filed her request for a hearing on October 10, 2011, (Doc. 13-1 at 20); a hearing was held on October 22, 2012, before Administrative Law Judge ("ALJ") Edward L. Thompson (Doc. 13-10 at 14–83). Ms. Samuels and Mary D. Weber, an impartial vocational expert, testified at the hearing. *Id.* Ms. Samuels appeared pro se, and signed a waiver of representation. *Id.*

The ALJ issued his opinion on December 19, 2012, and determined that Ms. Samuels had protectively filed the subject disability application for the closed period beginning November 19, 2005 and ending December 31, 2007.[1] (Doc. 13-1 at 20–21). The ALJ concluded that Ms. Samuels was not disabled under 20 C.F.R. § 404.1520(f) during the closed time period. (Doc. 13-1 at 29). Ms. Samuels filed an application for review with the Appeals Council, which was summarily denied, (Doc. 13-1 at 8–11), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Samuels complains that the Commissioner committed reversible, legal error by: (1) formulating a residual functional capacity determination unsupported by substantial evidence and the law because he failed to properly consider the limitations

---

[1] The ALJ calculated the dates of the closed period in accordance with the principles of *res judicata* and administrative finality. The Administration's prior determination was final on November 18, 2005, and therefore the time period for adjudicating the subject claim began the day after that decision, or November 19, 2005. (Doc. 13-1 at 21). The ALJ found that the closed period ended on December 31, 2007 because that was the day Ms. Samuel's Title II-insured status expired. *Id.*

2

caused by her mental impairments; (2) failing to make the required findings regarding the mental demands of her past relevant work; (3) making an adverse credibility finding in violation of the law; and (4) failing to properly consider the additional evidence she submitted to the Appeals Council. (Doc. 17).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record.[2] Because the ALJ did not properly develop the record as to Ms. Samuels' emotional impairments, the residual functional capacity findings are unsupported by substantial evidence and are legally erroneous. Therefore the Court finds that the Motion shall be **GRANTED** and the case shall be **REMANDED** for further proceedings.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

---

[2] Reviewing the briefs with the administrative record in this case was unnecessarily cumbersome. The Commissioner paginated every page by hand, and misnumbered several of the page numbers by mistake. (Doc. 13-1 at 15, 16). The administrative record, which is over 760 pages long, was not embedded with an electronic index for efficient browsing, and many pages were marked with two or more different page numbers. Ms. Samuels responded to the confusion by adopting her own numbering convention. (Doc. 17 at 1 n. 1). As a result of all of the foregoing, the Court was left to puzzle over the location of every document referenced in the parties' briefs.

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, in light of his residual functional capacity ("RFC"), age, education, and

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

### III.     Background

Ms. Samuels applied for disability benefits alleging that she suffered from debilitating back, hip, and leg pain as a result of a back injury that occurred in 1987. (Doc. 13-3 at 38–39). The administrative record includes Ms. Samuels' medical records, earnings records, work history report, disability application, hearing testimony, and a non-examining state agency evaluation.[3]

At step one, the ALJ determined that Ms. Samuels had not engaged in substantial gainful activity during the closed period. (Doc. 13-1 at 23). At step two, the ALJ concluded that Ms. Samuels was severely impaired with "lumbar degenerative disc disease, L3-4, L5-S1, status post L4-5 fusion." *Id.* At step three, the ALJ found that none of Ms. Samuels' impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. (Doc. 13-1 at 24–25). At steps two and three, the ALJ did not mention any evidence that would suggest that Ms. Samuels was afflicted by a mental impairment or experienced any limitations as a result of a mental impairment.

The ALJ proceeded to step four, and made an RFC finding that Ms. Samuels could perform a restricted range of light work, as that term is defined in 20 C.F.R. § 404.1567(b), except that she could only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Doc. 13-1 at 25–28). The ALJ did not assess Ms. Samuels with any

---

[3] A Field Officer of the Administration reported on March 7, 2012 that portions of Ms. Samuels' file were lost between the initial and reconsideration stages and never recovered. (Doc. 13-2 at 28). Upon information and belief, the ALJ and the Appeals Council did not review any of the missing documents because they were never recovered.

functional limitations due to a mental impairment. In making the RFC finding, the ALJ referenced Ms. Samuels' mental condition twice. He noted that Ms. Samuels testified that one of the side effects of her medication was that she had difficulty concentrating. (Doc. 13-1 at 25). He also quoted one of the Administration's case development logs: "[the claimant] states she is fine mentally, no problems, depression or anxiety when she states in function [report] that she has a counselor and is [diagnosed] with anxiety." (Doc. 13-1 at 26).

Ms. Weber, the impartial vocational expert, testified that Ms. Samuels' past relevant work is properly classified as "Teacher of learning disabled" in the Dictionary of Occupational Titles ("DOT"). (Doc. 13-1 at 28). The DOT defines that job as light and skilled work. *Id.* Ms. Weber testified that a person with Ms. Samuels' RFC could meet the physical and mental demands of such work. *Id.* The ALJ concluded that Ms. Weber's testimony was harmonious with the DOT definition, and adopted the testimony. *Id.* The ALJ found that, based on his RFC determination, Ms. Samuels was capable of performing her past relevant work as a teacher of learning disabled, both as such work is generally performed in the national economy and the way it was actually performed by Ms. Samuels. *Id.* The ALJ concluded that Ms. Samuels was therefore not disabled. (Doc. 13-1 at 30).

After receiving the ALJ's unfavorable decision, Ms. Samuels requested review from the Appeals Council and acquired legal representation. (Doc. 13-2 at 21). On May 9, 2013, Ms. Samuels submitted a memorandum to the Appeals Council, explaining that she had previously undergone a consultative psychiatric evaluation at the request of the Commissioner, but that the consultative examiner's report was missing from the

administrative record. (Doc. 13-2 at 22–27).

Michael F. Gzaskow, M.D. conducted the consultative psychiatric examination of Ms. Samuels on July 7, 2011. (Doc. 13-1 at 32; Doc. 13-2 at 46). Ms. Samuels explained to the Appeals Council that Dr. Gzaskow's psychiatric report, along with various other medical records, were among the documents that were lost and omitted from the administrative record. (Doc. 13-2 at 23). Ms. Samuels asked the Appeals Council to obtain the missing evidence, remand her case to the ALJ with instructions that the missing records be obtained and reviewed, or grant her a reasonable extension to obtain the missing records herself. (Doc. 13-2 at 21, 23, 27). A few weeks later, Ms. Samuels also requested information about Dr. Gzaskow's psychiatric report from the Administration. (Doc. 17-1 at 3–4).

The Appeals Council denied Ms. Samuels' request for review on July 16, 2013, explaining that it considered the memorandum, but that it found no reason to change the ALJ's decision. (Doc. 13-1 at 8–10). While the Appeals Council accepted Ms. Samuel's memorandum into the record, it did not address the issue of the missing medical records. (Doc. 13-1 at 11).

On August 14, 2013, Ms. Samuels submitted additional evidence to the Appeals Council and requested it reconsider its decision denying review. (Doc. 17-1). The new evidence included a medical report from Louise F. Burnham, M.A., B.M.C, who Ms. Samuels alleges was her counselor during the closed period. (Doc. 17-1, 17-4, & 17-5). The new evidence was not admitted into the administrative record, and was presented to the Court as attachments to the Motion. The Appeals Council did not respond to Ms. Samuels' request for reconsideration, and she properly appealed the final decision of the

7

Commissioner to this Court.

**IV.    Analysis**

Ms. Samuels contends that the ALJ committed error by formulating a RFC determination unsupported by substantial evidence and the law, because the ALJ failed to properly develop the record as to her mental impairments and assess her work-related abilities on a function-by-function basis. She also argues the ALJ committed reversible error at step four because he did not properly assess the mental demands of Ms. Samuels' past relevant work. She further maintains that the ALJ's adverse credibility finding is flawed because he did not engage in the appropriate analysis of her testimony. Last, she claims that the Appeals Council improperly disregarded new evidence, and that this case should be remanded pursuant to the sixth sentence of 42 U.S.C. § 405(g).

The Commissioner responds that the ALJ's RFC finding is supported by substantial evidence and is not legally erroneous. The Commissioner maintains that the ALJ did not fail to properly develop the record as to Ms. Samuels' mental impairments. The Commissioner also argues that the ALJ made the appropriate inquiry and findings into the mental demands of Ms. Samuels' past work. The Commissioner contends that the ALJ properly assessed Plaintiff's credibility. Finally, the Commissioner argues that a sixth sentence remand is not appropriate because the new evidence does not satisfy the criteria requiring remand.

    A.    <u>*Ms. Samuels' Challenge to the RFC Finding: Mental Impairments*</u>

Ms. Samuels argues that the ALJ did not consider all of the evidence or properly develop the record regarding her mental impairments in making the RFC determination. As explained above, the ALJ assessed Ms. Samuels as capable of doing a reduced

range of light work, and did not place any limitations on her due to a mental impairment. Ms. Samuels points out that there is evidence of her ongoing mental health treatment throughout the record, which the ALJ only cursorily addressed in his decision. Therefore, Ms. Samuels reasons that the ALJ rendered an RFC finding that is unsupported by substantial evidence and the law. (Doc. 17 at 7–8).

The Commissioner responds that the ALJ did not commit legal error, because the evidence of Ms. Samuels' mental impairments during the closed period was insignificant, and because Ms. Samuels failed to satisfy her burden of proving she was under a disability. The Commissioner also argues that the ALJ did not breach his duty to develop the record, and that even if he did, such error would be harmless. The Commissioner asks the Court to affirm the final decision denying disability benefits.

    1.    *The ALJ's Analysis of Ms. Samuels' Mental Impairments*

Ms. Samuels argues that the Commissioner failed to make the proper findings regarding her alleged mental impairments. The Commissioner responds that there was insufficient evidence of Ms. Samuels' mental impairments, and therefore the ALJ was not required to make specific findings as to those impairments.

When an ALJ is presented with evidence of a mental impairment, he must conduct a specific two-step procedure. *Grogan*, 399 F.3d at 1264. The ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then the Commissioner evaluates the impact that the mental impairment has on the claimant's RFC. *See* 20 C.F.R. § 404.1520a(b)(2); *Grogan*, 399 F.3d at 1264. The ALJ should document the application of the technique in his decision,

incorporate his pertinent findings and conclusions, and also describe the claimant's significant history, examinations, laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment. *See* 20 C.F.R. § 404.1520a(e).

Ms. Samuels contends that medical records show she was taking prescribed medication to treat her diagnosed depression, anxiety, and ADHD throughout the closed period. On October 19, 2005, the day she underwent surgical caudal and right L3 selective epidural blocks, she reported to her surgeons that she was taking Lexapro[4] and Adderall[5] on a daily basis. (Doc. 13-5 at 67). Then on December 7, 2006, she stated that she was taking Lexapro, Adderall, and BuSpar[6] for anxiety and attention deficient disorder. (Doc. 13-5 at 59). Six weeks later she reported using Lexapro, Adderall, and Trazodone[7] on a daily basis.[8] (Doc. 13-9 at 48–49).

The record contains Ms. Samuels' complaints of having difficulty concentrating. At the hearing, Ms. Samuels testified that her "[p]ain, fatigue, and the medication all make it difficult to concentrate." (Doc. 13-10 at 56). Ms. Samuels stated in her Function Report that she managed her stress symptoms by meditating and working with a counsellor, and

---

[4] Lexapro is the trade name under which escitalopram is sold. It is a selective serotonin reuptake inhibitor ("SSRI") commonly used to treat depression and generalized anxiety disorder. Nat'l Insts. of Health, *Escitalopram*, MEDLINEPLUS (Apr. 13, 2012),
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a603005.html.

[5] Adderall is a stimulant commonly used to treat ADHD. Nat'l Inst. of Mental Health, U.S. Dep't of Health & Human Servs., *Mental Health Medications* 20 (2012),
http://www.nimh.nih.gov/health/publications/mental-health-medications/index.shtml.

[6] BuSpar is the trade name under which buspirone is sold, and is frequently prescribed to treat depression. *Id.* at 10.

[7] Trazodone is a mood-elevating drug specially designed to treat depression. Nat'l Insts. of Health, *Trazodone*, MEDLINEPLUS (Jan. 15, 2014),
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html.

[8] The report was made on January 16, 2008, several weeks after the end of the closed period. However, evidence taken outside of the closed period is pertinent if it discloses the severity and continuity of impairments, which existed before the closed period, or tends to identify additional impairments that could reasonably be presumed to have been present during the closed period. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).

that she has feelings of isolation. (Doc. 13-3 at 35, 36).

Ms. Samuels points out that the record reflects that in the early stages of her claim, the Administration conducted some investigation into her mental impairments. The Administration's case development logs show that on November 10, 2010, a representative wrote that Ms. Samuels had problems with depression and had been prescribed Prozac.[9] (Doc. 13-1 at 38). An undated log indicated that Ms. Samuels reported that she is doing fine mentally and has no problems with depression or anxiety, even though she had written on her Function Report that she was treated by a counselor and diagnosed with anxiety. (Doc. 13-1 at 31, 32, 33). On February 21, 2011 and March 23, 2011, the Administration requested Ms. Samuels' mental health records from Ms. Burnham, whom Ms. Samuels claims was her therapist during the closed period. (Doc. 13-1 at 31–32). The Administration also ordered a consultative psychiatric examination from Dr. Gzaskow. However, records from Ms. Burnham and Dr. Gzaskow do not appear in the administrative record.

The Commissioner responds that Ms. Samuels did not assert in her disability application that she was under a disabling mental impairment, and therefore had no obligation to specifically address that issue in the decision. However, the ALJ acknowledged that there was conflicting, if not inconclusive, evidence concerning Ms. Samuels' mental health. He noted that Ms. Samuels reported that she was diagnosed with anxiety and was being treated by a counselor, but that she also stated she is fine mentally and has no problems with depression or anxiety. (Doc. 13-1 at 26).

---

[9] Prozac is the trade name under which Fluoxetine is sold, and is a SSRI is used to treat depression, obsessive-compulsive disorder, some eating disorders, and panic attacks. Nat'l Insts. of Health, *Fluoxetine*, MEDLINEPLUS (July 15, 2014), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a689006.html.

11

Apart from reciting two statements that Ms. Samuels made about her symptoms, the ALJ did not make any particularized findings regarding Ms. Samuels' mental health. He did not further expand upon Ms. Samuels' mental health treatment, or discuss her consistent use of anti-depressant, anti-anxiety, and ADHD medications. He did not make any reference to the consultative examination by Dr. Gzaskow or the other documents omitted from the record. He did not even state that his finding of non-disability was supported by a dearth of objective medical evidence regarding Ms. Samuels' alleged mental impairments. *See e.g. Baker v. Bowen*, 886 F.2d 289, 292 (10th Cir. 1989) (holding that an ALJ's reliance on the "dearth of objective medical evidence" to support the denial of benefits was erroneous where the ALJ did not properly develop the record and the claimant proceeded pro se); *see also Cruz v. Heckler*, 593 F. Supp. 45, 52 (S.D.N.Y. 1986) (finding that the ALJ erred by failing to elicit crucial evidence from a pro se claimant, when he relied on the "dearth of objective data" in the record to make a finding of non-disability). Thus, the Court finds that the ALJ failed to conduct the specific two-step procedure for mental impairments in his decision.

*2.     The ALJ's Duty to Develop the Record*

Ms. Samuels contends that the ALJ failed to properly develop the record regarding her mental impairments. Specifically, she maintains that the ALJ should have developed the record by procuring and reviewing the consultative report of Dr. Gzaskow, or that the ALJ should have ordered a new consultative psychiatric examination. She argues that, had the ALJ properly developed the record, material evidence may have been revealed and she would have succeeded on her claim.

The Commissioner responds that the ALJ was not required to develop the record

any further, and that it was Ms. Samuels' burden to demonstrate that her functional limitations and disability endured for at least 12 consecutive months, which she failed to do. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), (c). The Commissioner argues that the ALJ's failure to conduct the analysis of Ms. Samuels' mental impairments in the decision was not error because there was insufficient evidence to support a more restrictive RFC finding. The Commissioner also maintains that the record is devoid of any treating records diagnosing a mental condition, and that the pre-operative reports regarding Ms. Samuels' prescription drug use are not diagnostic in nature.

Although the claimant in a social security disability proceeding bears the burden of establishing her disability, unlike a typical judicial proceeding, a social security disability hearing is a nonadversarial proceeding. *Miracle v. Barnhart*, No. 05-6308, 187 Fed. Appx. 870, 874 (10th Cir. 2006) (unpublished) (quotation omitted). The ALJ is responsible for ensuring "that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quotation omitted). "The duty to develop the record is limited to fully and fairly developing the record as to material issues." *Id.* at 1168. (quotation omitted). The ALJ must ensure that the record is developed enough to make a proper analysis of a claimant's physical and mental limitations or restrictions. Social Security Rule ("SSR") 96-8p, 1996 SSR LEXIS 5 at *14. The ALJ's duty "is particularly acute where the claimant is unrepresented at the hearing." *Miracle*, 187 Fed. Appx. at 874.

The ALJ should develop the record at the hearing "through careful questioning, and by obtaining the services of a consultative examiner when necessary." *Id.* The ALJ may also develop the record "by obtaining pertinent, available medical records which

13

come to his attention during the course of the hearing." *Id.* (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p, 1996 SSR LEXIS 5 at *14.

The ALJ "has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166. The Regulations require the ordering of a consultative examination when the record needs clarifying and the Administration is unable to seek clarification from the claimant's medical source. *See* 20 C.F.R. § 404.1512(e). When evidence is in conflict, inconsistent, ambiguous, or insufficient, then the ALJ should order a consultative examination. 20 C.F.R. § 404.1519a(b)(4). "The starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167. The evidence should establish a reasonable possibility that a disability exists, and that a consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability. *Id.* at 1169.

Ms. Samuels contends that a sufficient quantum of evidence was in the record to raise an issue of material fact regarding her mental impairments. Therefore, she reasons that the ALJ erred by failing to procure Dr. Gzaskow's report, or in the alternative order another consultative examination. The Commissioner responds that Ms. Samuels waived any argument that the record was underdeveloped by failing to allege in her disability application or at the hearing that she was under a disabling mental impairment. (AR 146, 733–45, 758).

The Commissioner cites the case of *Callicoatt v. Astrue*, No. 07-7096, 296 Fed. Appx. 700 (10th Cir. Oct. 20, 2008) (unpublished) for the proposition that a claimant's failure to allege an impairment at the administrative stage moots any future argument that the ALJ failed to develop the record as to that impairment. (Doc. 18 at 6). However, the Commissioner misstates the holding reached by the Tenth Circuit in *Callicoat*. In *Callicoatt*, the claimant argued that the ALJ failed to properly consider her obesity in combination with her other determinable impairments. *Callicoatt*, 296 Fed. Appx. at 702. The Tenth Circuit upheld the Commissioner's finding of non-disability, because the claimant pointed to no evidence in the record demonstrating her obesity exacerbated her other determinable impairments. *See id*. The Tenth Circuit stated it would not decide whether the ALJ in that case had an affirmative legal duty to consider the claimant's obesity, when the disabling effect of her obesity was not specifically raised by the claimant before the ALJ but there were references to her high weight throughout the record. *See id*. at 702. That court was also careful to point out that the claimant explicitly stated she was not alleging that the ALJ committed error by failing to develop the record as to the effects of her obesity. *Id*. at 702–03. This case is distinguishable from *Callicoatt* because Ms. Samuels contends that the ALJ failed to both develop the record and properly consider the evidence of her mental impairments.

The Court is further guided by the Tenth Circuit's reasoning in *Hawkins* in making its analysis. In that case, there was conflicting evidence about whether the claimant had a mental impairment. *Hawkins*, 113 F.3d at 1165. The record contained a psychiatrist's opinion that the claimant did not suffer from a medically determinable impairment, as well as medical records that the claimant regularly took anti-depressant medication. *Id*. That

court found that the psychiatrist's opinion provided substantial evidence for the ALJ's conclusion that the claimant did not suffer from a severe mental impairment. *Id.* Thus, the ALJ did not err by neglecting to order an additional psychiatric examination. *Id.*

Unlike *Hawkins*, the record in this case is bereft of any medical source statements opining that Ms. Samuels' did not suffer from a mental impairment during the closed period. Thus, there is no objective medical evidence to provide support for the ALJ's decision to discount the evidence of Ms. Samuels' mental impairments.

The Commissioner contends that the evidence of Ms. Samuels' mental impairments did not raise a material issue requiring further development of the record. However, it is difficult to overlook the fact that the Administration found there was enough evidence to order a consultative psychiatric report at the reconsideration stage of determination. *See Dutil v. Barnhart*, 457 F. Supp. 23 1321, 1328 (M.D. Fla. 2005). It is further noteworthy that when the Administration denied Ms. Samuels' disability claim at the reconsideration stage, it said that it had evaluated her as a claimant who had only alleged disabling depression. (Doc. 13-2 at 46). However, Dr. Gzaskow's consultative psychiatric evaluation was subsequently lost, and neither the Court, the ALJ, nor the Appeals Council had the benefit of reviewing Dr. Gzaskow's findings.

The Commissioner argues that it was Ms. Samuels' burden to find and retrieve Dr. Gzaskow's consultative report if she wanted the evidence reviewed by the ALJ or Appeals Council. However, Ms. Samuels has demonstrated that she made several attempts to obtain information about the missing documents. Further, the Court notes that the ALJ's duty to develop the record is "especially compelling" when the Administration is responsible for the lack of medical evidence in the record. *Baca*, 5 F.3d

at 480; *see also Fowler v. Califano*, 596 F.2d 600, 604 (3d Cir. 1979) (noting that when social security records are lost by the Administration, it would be "unconscionable for the Administration to take a position that in effect permits it to profit by its own errors."). The ALJ should take the appropriate steps to acquire material evidence that already exists. *See Hawkins*, 113 F.3d at 1166 n. 5. Therefore, the Court finds that the loss of the records placed a higher burden on the Commissioner and not on Ms. Samuels.

The Commissioner also maintains that any consultative psychiatric examination taken after Ms. Samuels filed her claim would not accurately reflect Ms. Samuels' mental condition during the closed period. She reasons that any error the ALJ committed in failing to obtain Dr. Gzaskow's report or order a new consultative psychiatric examination was harmless. The Court does not agree with this argument, because the ALJ may consider evidence that originates outside of the closed period if it is pertinent to the claimant's condition during the closed period. *See Baca*, 5 F.3d at 479.

The Court recognizes that this may be one of those difficult cases "where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." *Hawkins*,113 F.3d at 1167. However, an ALJ has a duty to develop the record when he finds a claimant's medical records concerning her mental impairment are insufficient. *Thomas v. Barnhart*, No. 04-7141, 147 Fed. Appx. 755, 760 (10th Cir. Sept. 2, 2005) (unpublished). Here, the duty was even higher because Ms. Samuels appeared pro se at the hearing. *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

The Court finds that the evidence of Ms. Samuels' depression, anxiety, and ADHD was insufficient to support a finding of disability, but that it was sufficient to raise

17

…
the issue of her mental and psychological capacity to engage in substantial gainful activity. *See Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir. 1981). The ALJ did not explain his reason for discounting evidence that Ms. Samuels was taking prescribed medication for mental impairments, and made no effort to obtain information about her mental health treatment.[10] Therefore, the case must be remanded for further development of the record as to Ms. Samuels' mental impairments and resulting functional limitations.

### V.    Conclusion

The Court holds that the ALJ failed to properly develop the record regarding Ms. Samuels' mental impairments. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. On remand the Commissioner should make every reasonable effort to obtain the records that were identified as omitted from the administrative record, including Dr. Gzaskow's consultative report, and may also consider ordering an additional consultative psychiatric examination of Ms. Samuels in order to assess her mental condition. The Court does not decide any other issue raised by Ms. Samuels on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Ms. Samuels' *Motion to Reverse or Remand Administrative Agency Decision or in the Alternative Motion to Remand Pursuant to Sentence 6 of 24 U.S.C. § 405(d)*, (Doc. 16), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

---

[10] The Court also notes that at the hearing the ALJ did not question Ms. Samuels directly about her mental health treatment, symptoms, or use of prescribed medications.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE